(C.D. 2125)

BURGESS BATTERY CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 20, 1959)

*Sharretts, Paley & Carter* (*Howard Clare Carter* and *W. R. Johnson* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise here involved is described on the invoice as "carbon cloth" and was assessed with duty at the rate of 23 cents per pound and 19 per centum ad valorem under the provision in paragraph 1539(b), Tariff Act of 1930, as modified by T.D. 54108, for—

Manufactures wholly or in chief value of * * * any * * * product of which any synthetic resin or resin-like substance is the chief binding agent.

At the trial of the issue, it was conceded by counsel for the defendant that if the court should find the foregoing classification to be incorrect, the correct classification of the merchandise is as claimed in the protest, viz, under paragraph 216, as modified by T.D. 51802, as—

Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for,

with duty assessment at 15 per centum ad valorem.

A sample of the involved merchandise is before us as plaintiff's illustrative exhibit 1. It appears to be a strip of a black, flexible substance. There is no dispute as to the manner in which the merchandise reached the condition in which it was imported and as illustrated by exhibit 1. Briefly, it is as follows:

The materials used were carbon black, graphite, and a synthetic resin referred to as a poly-isobutylene resin. These three materials were mixed together, and, during the mixing, the resin became, as the single witness called put it, "a kind of liquid" and "something that will flow under high pressure."

The mixture was then made into a film or cloth on a calender, which is evidently a machine with heated rolls which produces a film of the desired thickness, and which, at the same time, also produces the desired width of the film. The production process was a continuous one and resulted in a long, 6-inch wide strip of film which had the carbon and graphite evenly dispersed in the film. After being allowed to cool, the strip was wound on a core, which is the form in which it was imported and sold.

Both parties are in agreement that the provision in paragraph 1539(b), *supra*, for—

Manufactures wholly or in chief value of * * * any * * * product of which any synthetic resin or resin-like substance is the chief binding agent,

is one subject to the "preexisting material" doctrine, i.e., that for a manufacture to be classifiable thereunder a "product of which any synthetic resin or resin-like substance is the chief binding agent" must first exist before a manufacture is made with its use. See *J. E. Bernard & Company, Inc.* v. *United States*, 32 Cust. Ct. 72, C.D. 1582, reversed on other grounds in *United States* v. *J. E. Bernard & Co., Inc.*, 42 C.C.P.A. (Customs) 69, C.A.D. 573.

Plaintiff argues that in the manufacture of the imported carbon cloth there was no material existing before the carbon cloth itself was made which was bound by a synthetic resin. The synthetic resin, it contends, existed by itself and not as an ingredient in any product until after it was introduced into the process which manufactured the carbon cloth. That process, it is contended, was a *single*, continuous process, and the first product of the process was the finished carbon cloth.

Defendant's argument is that a "product of which [a] synthetic resin * * * is the chief binding agent" was formed when the resin and the carbon black and graphite were mixed together, and that the film which was subsequently made from that mixture was a "manufacture of" such product.

It will be seen that the difference between the two views is based upon a divergence in concept of the involved process as being a single operation which transformed the separate ingredients into a finished article, or a process which involved more than one operation at one stage of which, prior to manufacture of the finished article, there existed a product of which a synthetic resin was the chief binding agent.

We have carefully examined the record testimony of the only witness called in this case. While, because of a desire to protect trade secrets, this man was under some disability in describing the process by which the carbon cloth came into its imported form, we think it sufficiently appears that, although the process was continuous, it was a multistage, rather than a single stage, process, and that the stages were sequential, i.e., followed each other in point of time.

With respect to the manufacture of the imported carbon cloth, it appears there were *two* separate and well-defined stages in the manufacturing process. The first stage was to make the mixture of the materials involved, and the second stage was to calender the mixture. When the materials were mixed together, the result was a liquid or a semiliquid, consisting of the resin with carbon black and graphite dispersed in it. The purpose of the resin in the mixture was to bind the other ingredients and itself into a homogeneous mass, and we are of the opinion that this mixture was a product of which a synthetic resin was the chief binding agent.

We think there is an analogy between the manufacturing situation involved in the case at bar and that which was involved in the *Bernard* case, hereinbefore cited. That case involved imported washing machine agitators made of Bakelite which had been classified under paragraph 1539 (b), *supra*. The materials in the Bakelite were a synthetic resin and finely ground cotton linters, purchased by the manufacturer in powder form and mixed in the proper proportions.

It appeared that the synthetic resin in the Bakelite would not become activated, i.e., would not physically bind the materials with

which it was associated, except at comparatively high temperatures (e.g., 300 degrees F.) and comparatively high pressures (e.g., 300 tons). For convenience in manufacture, the Bakelite compound, consisting of the synthetic resin and cotton linters, was made, under room temperature and comparatively light pressure (20 tons), into pellets, three of which were required for the manufacture of each agitator. At that temperature and at that pressure, the synthetic resin was not activated.

In the manufacture of the agitators, the pellets were placed in a metal mold and subjected to heat at 300 degrees F. and pressure of 300 tons. At that heat and pressure, the synthetic resin became activated and the material took the form of a molten mass, filled every part of the mold, and, when the molded material was allowed to cure and the heat and pressure were removed, the result was a solid, molded article in the form of a washing machine agitator.

It was contended by 'the plaintiff in that case that, until the heat and pressure were applied to the material in the pellets, the synthetic resin did not bind anything, and that, inasmuch as the agitator was made at the same time that the synthetic resin became a binding agent, there was no preexisting product of which synthetic resin was the chief binding agent from which the agitators were made. Consequently, it was claimed that classification under paragraph 1539 (b) was improper.

The decision of this court in favor of the plaintiff's claim was reversed on appeal to the Court of Customs and Patent Appeals, the court pointing out that the pellets of synthetic resin and cotton linters constituted an *unactivated* molding compound, of which synthetic resin was the chief binding agent, and was a product of which synthetic resin was the chief binding agent, separate and independent from the agitator ultimately manufactured with its use.

If the reasoning of our appellate court in the *Bernard* case be applied to the manufacturing situation in the case at bar, it will be seen that when the resin, carbon black, and graphite were mixed together there was thereby created a material, or a product, similar or analogous to the Bakelite compound, of which synthetic resin was the chief binding agent in either unactivated, semiactivated, or activated form.

Of course, the analogy between the facts of the *Bernard* case and those in the case at bar is not perfect. It is true that the Bakelite molding compound in the *Bernard* case had an existence *completely* separate and independent of the operations by which the agitators were manufactured, and was characterized by our appellate court as an "article of commerce," whereas the mixture of synthetic resin, carbon black, and graphite in the case at bar was obviously not an article of commerce but was created immediately, in point of time, be-

fore the subsequent calendering operation which formed it into the film or cloth made with its use.

We think these matters were cited by our appellate court to add emphasis to its ruling, but we do not think they were the *sine qua non* of the ruling. The principle of the *Bernard* case would seem to be that if the material, or product, specified in paragraph 1539(b), of which synthetic resin is the chief binding agent, actually does exist *as such material or product*, whether in activated or unactivated form, prior to the manufacturing operation by which the ultimate article is made, the requirements of the preexistence rule or doctrine are satisfied and the merchandise is classifiable under paragraph 1539(b).

The manufacturing situation in the case at bar and in the *Bernard* case may be compared, for purposes of distinction between *simultaneous* and *sequential* manufacturing operations, with that which was involved in the case of *United States* v. *Accurate Millinery Co., Roberts, Reilly & Sons, et al.*, 42 C.C.P.A. (Customs) 229, C.A.D. 599. That case also involved the preexistence doctrine, but it there appeared that the process which made the ultimate product, a fur felt hood, also, *at the same time*, made the felt itself, and at no time did felt, as such, exist before the hood existed. It was there held that the requirements of the preexistence doctrine were not met.

By contrast, in the case at bar, there was a point of time at which the material in mixed form existed, *as a mixture*, before the film or cloth was made with the use of the mixture.

Since it appears that the merchandise is classifiable under paragraph 1539(b) and that it is also classifiable under paragraph 216, the question becomes one of relative specificity, that is to say, which of the two provisions of the tariff act which embrace the imported article more precisely describes it.

We observe that the provision in paragraph 1539(b) is for manufactures "wholly or in chief value of" a given product or material, while the provision in paragraph 216 is for articles or wares composed "wholly or in part of" other materials. It has been long held that, no evidence of contrary legislative intent appearing, such provisions are not equally specific, the former being the more specific of the two on the reasoning that—

* * * a greater percentage of the value of the article would have to be of the material called for in that paragraph than would be necessary for classification under the less specific paragraph. [*International Expediters, Inc.* v. *United States,* 41 C.C.P.A. (Customs) 156, C.A.D. 543, and cases therein cited.]

No legislative intent contrary to the application of this rule of relative specificity is manifest, and, for the foregoing reasons, judgment will issue overruling the protest herein.