**H. W. ROBINSON AIR FREIGHT CORP.**

v.

**UNITED STATES.**

C.D. 2207; Protest Nos. 60-4902.

United States Customs Court
First Division.

Oct. 4, 1960.

Hays, Busby & Rivkin, New York City (Alan S. Hays, David Busby, and Don-

ald H. Rivkin, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen. (Richard H. Welsh, New York City, trial atty.), for defendant.

Before OLIVER, Chief Judge, and MOLLISON and WILSON, Judges

MOLLISON, Judge.

The facts in the case at bar are set forth in a stipulation filed by counsel for the parties reading as follows:

"It Is Hereby Stipulated and Agreed by and between counsel for the plaintiff and the Assistant Attorney General, attorney for the United States, that the merchandise, a floor covering in the form of tiles 10½ inches by 10½ inches, ⅟₁₆ of an inch in thickness, some gray-green and other tan in color, covered by the above enumerated protest was assessed with duty at the rate of 17% ad valorem plus 21 cents per pound under paragraph 1539(b), Tariff Act of June 17, 1930, as modified.

"It Is Further Stipulated and Agreed:

"1. The merchandise in question is a plastic floor covering. It is non-laminated and is homogeneous.

"2. The said floor covering is manufactured in France by the Societe Chimique de Gerland.

"3. The said floor covering is manufactured and sold under the trade name 'Gerflex'.

"4. The form of Gerflex may be in rolls, squares and tiles, as described on pages 2 and 3 of the pamphlet entitled 'Gerflex Technical File' submitted herewith and marked Exhibit '1'.

"5. The technical details of wearing qualities, stretching, rigidity, elasticity, percussion, wear and tear, dimensional stability and homogeneity are as described on pages 6 to 12 inclusive of the said Exhibit '1'.

"6. Gerflex comes in a variety of colors, as shown in the 'Gerflex Shade Card' submitted herewith and marked Exhibit '2'.

"7. The manufacture of Gerflex is accomplished as shown on pages 4 and 5 of the aforesaid Exhibit '1'.

"8. The use to which Gerflex is applied is to cover floors in the same manner as felt-base floor coverings, and linoleum, generally wall to wall in the manner shown on pages 13 to 28 inclusive of the said Exhibit '1'.

"9. Gerflex is laid by glueing [sic], cementing or otherwise fastening it to the floor surface (usually wood, tile or cement) and becomes a permanent fixture and part of the floor surface to which it is attached. It is laid in the manner set forth on pages 29 to 52 inclusive of the said Exhibit '1'.

"10. Gerflex is an article composed of Polyvinyl chloride, calcium carbonate, mineral pigment, phthalic esters, phosphate esters, halogenated hydrocarbon and organic salts of lead barium and cadmium, in which said article the Polyvinyl chloride, a synthetic resin, is the chief binding agent.

"11. Submitted herewith for the record and marked Collective Exhibit '3' are two tiles included in the subject entry, which are representative of said Gerflex."

Plaintiff claims that the plastic floor tiles at bar are not properly classifiable under paragraph 1539(b), supra but are embraced by the provision in paragraph 1021 of the Tariff Act of 1930, 19 U.S. C.A. § 1001, as modified by T.D. 54108, for "Floor coverings not specially provided for" with duty assessment at 17 per centum ad valorem.

Alternatively, plaintiff contends that if the merchandise at bar is not covered directly by the above-mentioned provision of paragraph 1021, it is dutiable thereunder by similitude by virtue of paragraph 1559(a) of the Tariff Act as

amended by the Customs Simplification Act of 1954 (68 Stat. 1137). Inasmuch as we have found, as will appear, that there is at least one direct enumeration of merchandise chargeable with duty in the Tariff Act of 1930 under which the plastic floor tiles at bar are classifiable, it is unnecessary to consider the claim for classification by similitude.

So far as pertinent, the involved tariff provisions, as originally enacted and as they existed at the time of importation of the merchandise at bar, read as follows:

Paragraph 1539(b), Tariff Act of 1930 as enacted:

"* * * manufactures wholly or in chief value of any of the foregoing, [laminated products of which any synthetic resin or resin-like substance is the chief binding agent], or of any other product of which any synthetic resin or resin-like substance is the chief binding agent, 50 cents per pound and 40 per centum ad valorem."

Paragraph 1539(b) as modified by T. D. 54108:

"Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance" is the chief binding agent ...... 21¢ per lb. and 17% ad val."

Paragraph 1021, Tariff Act of 1930, as originally enacted:

"Common China, Japan, and India straw matting, and floor coverings made therefrom, 3 cents per square yard; carpets, carpeting, mats, matting, and rugs, wholly or in chief value of flax, hemp, or jute, or a mixture thereof, 35 per centum ad valorem; all other floor coverings not specially provided for 40 per centum ad valorem."

Paragraph 1021 as modified by T.D. 54108:

"Floor coverings not specially provided for (except grass or rice straw floor coverings, and not including felt-base floor coverings) . . . . . . . . . 17% ad val."

Plaintiff relies strongly upon the legislative history of paragraphs 1539(b) and 1021, supra, at the time of the enactment of the Tariff Act of 1930, as indicating that paragraph 1539(b) was not intended by Congress to include articles such as the plastic floor tiles at bar, and that it was intended that such articles should be covered by paragraph 1021.

Defendant, on the other hand, contends that the language of paragraph 1539(b) is so plain, clear, and distinct as to preclude resort to legislative history for its interpretation; that under the stipulated facts the merchandise at bar is within the purview of that paragraph, and that the legislative history of paragraph 1021, cited by the plaintiff in its brief, does not show a clear Congressional intent to include articles such as those at bar in the said paragraph.

Further, defendant contends that in the course of judicial interpretation of the language of the paragraph over a number of years the legislative history thereof was examined and the view thereof contended for by the plaintiff herein was rejected, and the interpretation of the language was held to be controlled by the statutory rule of construction of *ejusdem generis*. Defendant points out that under the application of that rule merchandise such as that at bar was held not to be covered by the provisions of paragraph 1021.

Taking up, first, the issue raised by the plaintiff with respect to the applicability of paragraph 1539(b) to merchandise such as that at bar, we note that the plaintiff's contention is predicated upon certain legislative history tending to show that the provision for

"* * * manufactures wholly or in chief value of * * * any * * * product of which any synthetic resin or resin-like substance is the chief binding agent * * *"

was inserted in paragraph 1539(b) as originally enacted in order to make provision for a group of products known as molded products, in the manufacture of which a mixture containing synthetic resin, or a resin-like substance, and a filler were molded under heat and pressure. Specifically, it is the plaintiff's contention that the quoted provision of paragraph 1539(b) is limited to manufactures made by molding processes with the use of a compound known as Bakelite, or similar compounds.

In its decision in the case of United States v. J. E. Bernard & Co., Inc., 42 CCPA 69, C.A.D. 573, the majority of our appellate court indicated that the language of paragraph 1539(b) above quoted was unambiguous. However, to verify its position and to demonstrate that there was no ambiguity in the language of the enactment, the majority quoted the legislative history which is here relied upon by the plaintiff, i. e., Senate Report No. 37, 71st Congress, 1st Session, as follows:

> "The phrase 'or of any other product of which any synthetic resin or resinlike substance is the chief binding agent,' has been inserted in order to make specific provision for an important group of products known as molded products. These are made by molding under heat or heat and pressure a mixture containing synthetic resin or a resinlike substance and a filler, such as wood flour and pigments.
>
> "Molded products included in this provision cover a wide range and are used chiefly in electrical or mechanical machinery where requirements of electrical insulation properties, mechanical strength, exactness of form and size, and resistance to destructive agents, render them of peculiar importance. These molded products find a multitude of uses."

Paragraph 7 of the stipulation hereinbefore quoted establishes that Gerflex is manufactured as shown on pages 4 and 5 of Exhibit 1. According to that exhibit, a mixture is made of a synthetic resin, to wit, polyvinyl chloride, and other materials such as plastifying and stabilizing agents, minerals, and colors. Presumably, the materials other than the synthetic resin in the mixture are "fillers;" at any rate there is no evidence indicating that they are not. The mixture is "calendered," which process, according to Webster's New International Dictionary, 2nd ed. 1945, and from an examination of the simplified diagram shown on the cited pages, consists of pressing the mixture through rollers. In calendering it appears that heat and pressure are applied, so that the final product is a smooth sheet of homogeneous material which is later cut into the imported tiles.

As has been stated, a majority of our appellate court held in the Bernard case, supra, that the provision in paragraph 1539(b) here in question was unambiguous. That provision is a designation by composition and description, and the imported tiles are within every particular of the provision, both as to composition and description, for they are manufactures (Gerflex) of a product (the mixture of the synthetic resin and the fillers) in which a synthetic resin (polyvinyl chloride) is the chief binding agent. It seems clear, therefore, that the language of the statute covers the articles at bar.

If the legislative history cited and relied upon by the plaintiff were held to be indicative of a Congressional intent to limit the provision to molded products and to exclude calendered products from the coverage of the provision, it would follow that the legislative history would be used to establish an ambiguity in statutory language which has been judicially determined to be unambiguous. This, of course, is not a proper use of legislative history in statutory construction. Railroad Commission of Wisconsin et al. v. Chicago, Burlington & Quincy Railroad Co., 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371.

Moreover, it seems to us that the process of calendering is akin to the process

of molding in that it forms the products resulting therefrom by the application of heat and pressure. For an analogous situation in which calendered products were held to be within the purview of paragraph 1539(b), compare the description of the manufacture of the tiles at bar with that of the carbon cloth involved in the case of Burgess Battery Co. v. United States, 43 Cust.Ct. 189, C.D. 2125.

We are of the opinion, therefore, that the provision in paragraph 1539(b), supra, is applicable to merchandise such as that at bar.

The next point to be considered is the plaintiff's claim that the provision in paragraph 1021 of the Tariff Act, as modified, for "floor coverings not specially provided for" is more specific in its application to the merchandise at bar than the provision in paragraph 1539(b).

As pointed out by counsel for the defendant in the brief filed in its behalf, the question of the scope of the above provision (and its predecessor in the same language in paragraph 1022 of the Tariff Act of 1922) has been before this and our appellate court at least four times.

Cited are Gimbel Bros., Inc. v. United States, 22 CCPA 146, T.D. 47111; United States v. J. L. Hudson Co., 23 CCPA 313, T.D. 48177; United States v. Inter-Maritime Forwarding Co., Inc., 41 CCPA 107, C.A.D. 537 and United States v. Damrak Trading Co., Inc., 43 CCPA 77, C.A.D. 611.

█ No purpose would be served by a detailed review here of the facts in those cases and the conclusions reached by our appellate court in view of the fact that an excellent account of the first three of such cases is contained in the opinion of the majority of the Court of Customs and Patent Appeals in its opinion in the Damrak case, at pages 80 and 81. In its opinion in the latter case the majority pointed out that in the three prior cases it had determined that the rule of *ejusdem generis* was applicable in interpreting paragraph 1021, and that among the

elements of similarity to be compared for the purpose of that rule were those of materials and texture, that is to say, in order to be classifiable under the general provisions for floor coverings not specially provided for, imported articles would have to be of material and texture similar to the particular items enumerated in the paragraph.

In its opinion in the Damrak case, the majority stated that certain legislative history had been cited to it which strongly indicated a Congressional purpose *not* to require such similarity to the particular articles named in the paragraph for classification of imported articles under the general provision.

The situation was succinctly stated by the majority in this fashion:

"We will now briefly summarize the material which we must consider in reaching our decision. On the one hand, we have a line of cases in which this court has determined the rule of *ejusdem generis* to be applicable to paragraph 1021, supra, in the sense that articles to be classified therein must be of similar material and texture to those enumerated. On the other hand, we have a very strong argument that the legislative intent shows that articles which fall under the clause 'not specially provided for' in paragraph 1021, supra, need not be of similar material and texture to those items enumerated in said paragraph."

In making its decision based upon a choice of the two alternatives thus presented the majority of our appellate court said:

"The question in this case, as can readily be seen, is a close one, and the arguments which have been presented by both parties are very strong. Under these circumstances this court in the past has stressed the importance of uniformity of decision in passing on these close questions of construction. United States v. Basket Importing Co., 13 Ct.Cust.

Appls. 98. Furthermore, while precedents clearly erroneous will not be followed, Roeller-Struss Co. v. United States, 12 Ct.Cust.Appls. 189, 191, this Court is not disposed to question the correctness of long and consistent judicial interpretation. Roger & Gallet v. United States, 12 Ct. Cust.Appls. 201, 203."

It seems clear that the court considered that the legislative intent, as manifested by the application of the rule of *ejusdem generis* and, at least, by certain of the legislative history which had been cited to it and applied in one of the three prior cases (United States v. J. L. Hudson Co., 23 CCPA 313, T.D. 48177), outweighed the contrary indication of legislative intent embodied in the material cited to it in the Damrak case. Accordingly, it adhered to the conclusion it had reached in the three prior cases.

From as much of the materials as are in our possession, i. e., records and reports of the decided cases, it appears that the legislative history which this and our appellate court considered in the cited cases concerning the scope of the general provision for floor coverings in paragraph 1021, supra, was that contained in the Summary of Tariff Information, 1929, prepared by the Tariff Commission for the use of the Congress when the bill which ultimately became the Tariff Act of 1930 was under consideration.

There is no question but that the various Summaries of Tariff Information have proved, in some cases, to be valuable source material in the ascertainment of legislative intent. However, there can also be no question but that the history of the legislation during the course of its consideration by the Congress, if directly concerned with the particular question in litigation before the court, is more demonstrative or indicative of the actual legislative intent than a tariff summary prepared by a commission which itself has no legislative function.

The legislative history which has now been brought to our attention by counsel for the plaintiff relates to matter which transpired on the floor of Congress during debate on the tariff bill, and to matter which is contained in the reports of committees of the Congress to which the bill was referred for action. Inasmuch as those matters are directly concerned with the issue before the court in the present case, we believe they merit most careful judicial consideration. The legislative history to which we refer is, briefly, as follows:

On March 22, 1930, the United States Senate was considering H.R. 2667, 71st Congress, 2nd Session, which was a bill to revise the tariff and ultimately became the Tariff Act of 1930. Senator Copeland of New York offered an amendment to the provision for manufactures of india rubber in paragraph 1537(b) of the bill as reported to the Senate, which amendment provided as follows:

"Floor coverings wholly or in chief value of sponge rubber, 25 per cent ad valorem."

Senator Copeland explained the purpose of his amendment as follows:

"Mr. Copeland. Mr. President, if I may have the attention of the Senator from Utah [not—Senator Smoot, who was the sponsor of the bill in the Senate and who had charge of it], let me say that this amendment is designed to take care of a waif, the sponge rubber mat, which has no place at the present time. In talking the question over with the tariff experts they advised that perhaps this amendment might accomplish what is desired.

"The rubber-sponge mat is a very neat device. Any small rug is likely to slip on the wet floor, but this character of rug, being made of rubber, holds its place on such a floor."

Senator Smoot then replied:

"Mr. Smoot. Mr. President, the adoption of the amendment of the Senator would reduce the rate from 40 per cent ad valorem to 25 per cent. *The item covering this sponge mat is found on page 168, in para-*

*graph 1021, in lines 15 and 16, reading:*

"All other floor coverings not specially provided for, 40 per cent ad valorem.

"*Sponge-rubber mats now fall under that provision,* and if the Senator's amendment were adopted it would make the rate 25 per cent instead of 40 per cent, which would be a decrease." [Italics added.]

Senator Copeland expressed doubt that sponge rubber mats were included in paragraph 1021, and Senator Smoot stated that he would accept the amendment and let the matter go to conference, and the Senate agreed to the amendment. Cong.Record, Vol. 72, Pt. 6, p. 5921.

The amendment was assigned number 801, and the action taken by the conferees, as revealed by House Report No. 1326 and Senate Document No. 138, 71st Congress, 2nd Session, was as follows:

"Amendment No. 801: Under the House bill floor coverings of sponge rubber were not specifically mentioned, *but were dutiable at 40 per cent ad valorem in paragraph 1021 as floor coverings not specially provided for.* The Senate specifically names these articles, and imposes a duty of 25 per cent ad valorem; and the Senate recedes." [Italics added.]

The action of the committee of conference was adopted by the Congress.

There is no question but that sponge rubber mats differ in material and texture from the particular items named in paragraph 1021. This, in fact, was the holding in the case of Gimbel Bros., Inc. v. United States, 22 CCPA 146, T.D. 47111, the first of the four prior cases on the subject of the scope of the general provision for floor coverings on which defendant relies.

It seems therefore, very clear that the precise question here involved—whether it was the legislative intent that the general provision for floor coverings in paragraph 1021 should include articles which differ in material and texture from those enumerated in the particular provisions of that paragraph—was the subject of legislative consideration, and the intent to include such items was clearly made manifest.

Statements of sponsors or those in charge of a bill during the course of its passage, and reports of committees to whom it was committed for consideration and action, are among the most reliable and authoritative indicia of the legislative intent, and may be resorted to where, as here, it has been determined that the language of the enactment is ambiguous and where such statements or reports are explanatory of the particular issue before the court. United States v. St. Paul, Minneapolis, & Manitoba Railway Co., 247 U.S. 310, 318, 38 S.Ct. 525, 62 L.Ed. 1130; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 474–475, 41 S.Ct. 172, 65 L.Ed. 349; Mitchell v. Kentucky Finance Co., Inc. et al., 359 U.S. 290, 293–295, 79 S.Ct. 756, 3 L.Ed.2d 815.

It would seem that, in the light of so positive an indication of the actual legislative intent as is exhibited by the quoted statement of Senator Smoot and the reports of the committee of conference, the precedent established by the prior decisions in respect of the issue before us should be held to have been erroneous and not controlling of our action in the present case. Roeller-Struss Co. v. United States, 12 Ct.Cust.App., 189, T.D. 40170; Raphael v. United States, 23 CCPA 253, T.D. 48110, and United States v. R. J. Saunders & Co., Inc., 42 CCPA 128, C.A.D. 584.

If the prior decisions establishing the precedent were the unappealed rulings of this court, we would have no hesitancy, on the basis of the legislative history hereinbefore set out, in holding that the rule of *ejusdem generis* is inapplicable to the general provision for floor coverings in paragraph 1021, and that the plastic floor tiles at bar are classifiable thereunder. Further, we would hold that in the competition between the provision in

paragraph 1539(b) under which the merchandise was classified, and the general provision for floor coverings in paragraph 1021, the latter provision, being a designation, by use, prevails over the relatively less specific provision in paragraph 1539(b), which is a designation by composition and description.

However, the issue is one which has been before our appellate court four times, and, although in the last case, the Damrak case, a majority of the court stated that it considered the question to be a close one, it specifically ruled that the Congressional intent was that in order to be classified under paragraph 1021 an article must be *ejusdem generis* with the articles specifically enumerated in that paragraph. Further, the majority stressed the importance, in such situations, of adherence to long and consistent judicial interpretation.

Under these circumstances, we feel that in the present case our course should be to overrule the protest claims. Judgment will issue accordingly.