(Reap. Dec. 9927)

A. N. DERINGER, INC. *v.* UNITED STATES

Entry No. 3258.

(Decided February 27, 1961)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

DONLON, Judge: The issue in this appeal for reappraisement is whether certain pulpboard, exported from Canada on March 15, 1959, is an article that is specified in the final list of the Secretary of the Treasury, published on January 28, 1958, as T.D. 54521, which final list became effective as to merchandise imported on and after February 27, 1958. The Secretary prepared and published this final list pursuant to authority delegated to him by Congress. Section 6(a), Customs Simplification Act of 1956, T.D. 54165.

If this pulpboard is an article that is specified in the Secretary's published list, then section 6(a) requires that the merchandise shall be valued, first, on the basis of foreign or export value, whichever is higher, in accordance with the provisions of section 402a, Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

If this pulpboard is not an article that is specified in the Secretary's published list, then foreign value is not a value to be considered for this merchandise. In such case, the value first to be considered is export value. Section 402, Tariff Act of 1930, as amended by Customs Simplification Act of 1956.

There is no claim here, by either party, that this pulpboard does not have both a foreign value and an export value. The sole issue is whether it is such an article as is to be valued, under the Customs Simplification Act of 1956 and the Secretary's final list published pursuant thereto, without reference to whatever foreign value the merchandise may have.

Section 402a, as amended, is old section 402, renumbered by Congress in the Customs Simplification Act of 1956. The chief difference between former section 402(a) and new section 402 is the elimination of "foreign value" as a value to be considered in the appraisement of articles under section 402, except for those articles specified in the published final list of the Secretary of the Treasury. Under the 1956 Simplification Act, Congress directed the Secretary to include in his list those articles of merchandise as to which he had determined that, if they were appraised at export value under new valuation section 402, as amended, the values would, on average, be dutiable values "95 (or less) per centum of the average values at which such article was actually appraised during the fiscal year 1954."

The appraiser at St. Albans, Vt., ruled that the pulpboard of this litigation was an article specified in the Secretary's published list to be valued in the first instance at foreign value, under old section 402, renumbered as new section 402a. The appraiser found that this merchandise is a "board product" comprehended within the following specification:

*Board Products*

> Boards, wood pulp, including beer mat board (not plate-finished, super-calendered, friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined or vat-lined, embossed, printed, decorated or ornamented in any manner, or cut into shapes for boxes or other articles). [93 Treas. Dec. 14, 46, T.D. 54521.]

Accordingly, he appraised the pulpboard under section 402a at foreign value. He found the foreign value as $179.25 per short ton.

Plaintiff claims that this pulpboard is, in fact, a board product which is vat-lined, friction calendered, or coated, and thus that it is comprehended within the parenthetical list of board products which

are specifically excepted by the Secretary from the board products he specified in his list as to be valued, under section 402a, at the higher of foreign or export value. Plaintiff contends, therefore, that this pulpboard should be valued under section 402, as amended, on the basis of export value, and that export value of the merchandise is $132.84 per short ton, United States dollars.

Pretrial statements of counsel, required under rule 15 of the court, were originally filed in reappraisement R59/8546, which plaintiff had noticed for trial. On motion in open court at a term held at Rouses Point, N.Y., the rule 15 statements of R59/8546, including defendant's amended statement which the presiding judge then accepted, were ordered accepted and deemed filed, as of the respective filing dates, in reappraisement R59/8547, which is this case. (R. 5.)

Certain relevant facts were stipulated in open court. Counsel stipulated that, at the time of exportation of this pulpboard, merchandise, such as or similar to the imported pulpboard, was freely sold in Canada for export to the United States at $132.84 per short ton. (R. 5.) Counsel also stipulated that, at the time this pulpboard was exported, merchandise, such as or similar to it, was freely sold for home consumption in Canada at $179.25 per short ton, and that there was no higher export value. (R. 6, 7.) Both sides further concede that the pulpboard in litigation is a board product. (R. 7.)

Samples, illustrative of the merchandise in litigation, are in evidence. (Plaintiff's collective illustrative exhibit 1.)

Plaintiff adduced the testimony of Mr. Bryce Hatfield, technical superintendent of the Jonquiere Mill of Price Brothers & Co., the concern which produced this pulpboard. Mr. Hatfield testified that he is a graduate in chemical engineering of McGill University at Montreal; that he graduated in 1934; and that he has worked in the paper industry continuously since 1937. (R. 9.) As chief chemist for various firms that produce pulpboard, including Price Brothers & Co., he personally has checked the quality of newsprint and paperboard products produced by those firms. (R. 9.) He knows how pulpboard is produced, and is familiar with the terms vat-lined pulpboard, coated pulpboard, and friction calendered pulpboard.

His duties as technical superintendent for Price Brothers & Co. put him in charge of production quality at the Jonquiere Mill, including the quality of raw materials there used and the control tests that are made throughout the processing of the pulpboard. (R. 13.) Mr. Hatfield described the process of producing pulpboard in some detail, as follows:

Ground wood and sulphite stock, or pulp, at regulated consistencies are measured out of tanks into one of three beaters or mixers in different proportions to each beater. After mixing and addition of dyes, the size and alum to the beater supplying the top liner of the machine, and to the beater supplying the bottom liner of the machine, these beaters are dumped to their

respective holding chests. The stock is pumped from one holding chest to a further chest in the system, processed through a refining engine called a Jordan; from thence to a distributing box; from the distributing box the stock is directed to one or more of six or seven vats, depending upon which machine is being used. On the way to the vats, the stock is diluted with water to a low consistency. A vat consists of a semi-cylindrical tub, inside of which a cylinder covered with a wire mesh revolves. The dilute pulp suspension fills the vat nearly to the top. The revolving cylinder picks up a layer of fibers from the suspension. The water drains away through the mesh, and an endless woolen felt picks up each such layer of fibers in succession until an accumulation from one end of the vat system to the other is picked up. This felt then carries the wet sheet through a succession of press rolls to squeeze as much water as possible from the fibers. The sheet then enters the steam dryer section, which consists of several cylinders heated by means of steam to dry the board. On its exit from the dryer section, it enters the calender stack section. The calender stack consists of a number of heavy polished steel rolls mounted one above the other. The first stack is called the wet stack because at this point a coating may be applied to the surface of the sheet by means of water boxes. In this case, a solution of carboxymethyl cellulose and polyvinyl alcohol was added to one surface or liner of the board. On its travel through the calender stack, the finish of the board is improved. It is then passed through a second calender stack for further finish improvement. The sheet is then wound upon a reel, from which it is transferred to a rewinder, where it is slit to the width that the customer requires. After strapping and weighing and stamping, it is sent to the shipping department. It leaves the mill. [R. 14, 15, 16.]

In the opinion of Mr. Hatfield, the pulpboard of this appeal, represented by collective illustrative exhibit 1, was vat-lined. By this he means, he said, that the plies in the board (this particular board is 5-ply) were built up in a continuous process, one layer after the other, from cylinders that revolve in vats of dilute stock. (R. 17, 18.) One surface of the pulpboard is coated with a mixture of carboxymethyl cellulose and polyvinyl alcohol. (R. 21.) This type of coating conditions the surface to resist penetration by ink and other coating materials which are added to the surface of the pulpboard in its end use, that is in printing. (R. 21.)

Calendering, so Mr. Hatfield testified, is the process of threading sheets of the pulpboard through nips formed by the contact of polished steel cylinder rollers. These rollers are heavy; they weigh approximately a ton. The calendering process irons out the sheets and greatly improves their finish. The calendering process is produced by the friction of the cylinder rolls on the sheet as it is squeezed through the rollers. (R. 24.)

On cross-examination, Mr. Hatfield confirmed that, with slight variations, this same production process is one he personally has known since 1947. (R. 23.)

Defendant introduced no evidence, although plaintiff's witness was cross-examined. Decision, therefore, is to be made on the record which plaintiff has developed.

Plaintiff's brief compares the production of this pulpboard to the process that was described in *C. J. Tower & Sons* v. *United States*, 26 C.C.P.A. (Customs) 28, and finds it similar. In the *Tower* case, pulpboard, which was produced on a six-cylinder board machine by a continuous vat-lining process, was held to be dutiable, under paragraph 1413 of the Tariff Act of 1930, as vat-lined pulpboard. The reports of the Senate Finance Committee on H.R. 2667, the bill that became the Tariff Act of 1930, which reports were cited by our appeals court in the *Tower* case, are also relied on by plaintiff in its brief here.

In support of the contention that this pulpboard is "friction calendered," plaintiff refers to the definition of "calendered" mentioned by this court in *H. W. Robinson Air Freight Corp.* v. *United States*, 45 Cust. Ct. 102, C.D. 2207. That case involved classification of plastic floor tiles sold under the trade name "Gerflex." The product was processed from a mixture of synthetic resin which was "callendered." Calendering, the first division said, "according to Webster's New International Dictionary, second edition, 1945, * * * consists of pressing the mixture through rollers." Plaintiff argues here that the "additional friction quite clearly results in a friction calendered product."

"Coated" is defined, in the Dictionary of Paper (1951 edition), cited by plaintiff, as:

A term applied to paper and paperboard, the surface of which has been treated with clay or some other pigment and adhesive mixture, *or other suitable material, to improve the finish with respect to printing quality, color, smoothness, opacity, or other surface properties.* . . . [Emphasis copied.] [Plaintiff's brief, page 7.]

Defendant, in a statement of issues which it filed in lieu of the brief it asked leave to file, "now concedes that the said pulpboard is in fact vat-lined" and, hence, is excluded from the list of articles to be valued under section 402a, as amended. In view of the record, I so hold even without this concession.

This pulpboard is vat-lined. It is also both friction calendered and coated. Under the disjunctive exception in T.D. 54521, quoted, *supra*, the Secretary's final list, any one of these three processes would suffice to take a board product off the list of articles which are to be valued, in the first instance, at foreign value. I find, therefore, that foreign value is not a statutory basis for appraisement of this merchandise.

I find as facts:

1. That the merchandise of this appeal is a board product, to wit, pulpboard, which is vat-lined, friction calendered, and coated; that such merchandise was exported from Canada on March 15, 1959, and entered at St. Albans, Vt., on March 17, 1959.

2. That this merchandise is an article which is not specified in the final list of articles, published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956, but in fact is an article specifically excluded from such final list; that such list was made effective as to merchandise entered or withdrawn from warehouse for consumption on and after February 27, 1958.

3. That, at the time of exportation, such or similar merchandise was freely offered in Canada for sale to all purchasers for home consumption, in the ordinary course of trade, at a price of $179.25 per short ton.

4. That, at the time of exportation, such or similar merchandise was freely offered for sale in Canada to all purchasers for export to the United States, in the ordinary course of trade, at a price of $132.84 per short ton, United States dollars.

I conclude as a matter of law:

1. That pulpboard, which is vat-lined, friction calendered, or coated, is not included in the final list of articles, published by the Secretary of the Treasury, as articles to be valued in accordance with section 402a, Tariff Act of 1930, as amended, when entered or withdrawn from warehouse for consumption on and after February 27, 1958.

2. That, pursuant to section 402, as amended, this merchandise is to be appraised on the basis of export value.

3. That the export value of this merchandise, pulpboard, vat-lined, friction calendered, and coated, is $132.84 per short ton, United States dollars.

Judgment will be entered accordingly.