(C.D. 2593)

Standard Trading Co.
American Customs Brokerage Co. } *v.* United States

United States Customs Court, First Division

(Decided November 30, 1965)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*James F. O'Hara, Charles P. Deem,* and *Harold L. Grossman,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, is described on the invoices as willow baskets and designated by the item number 1502, with varying prefixes and suffixes, such as L 1502–SL, L 1502–S, L 1502–M, 1502–RS, or 1502–RM. The merchandise was imported from Japan in 1961 and was assessed with duty at 21 cents per pound at 17 per centum ad valorem under paragraph 1539(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as manufactures wholly or in chief value of any laminated product of which any synthetic resin or resin-like substance is the chief binding agent. It is claimed to be properly dutiable at 25 per centum ad valorem under paragraph 409 of said tariff act, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as articles, wholly or partly manufactured of willow.

The pertinent provisions of the tariff act, as so modified, provide:

[1539(b)] Laminated products (whether or not provided for elsewhere in the Tariff Act of 1930 than in paragraph 1539(b) thereof) of which any synthetic resin or resin-like substance is the chief binding agent:

\* \* \* \* \* \* \*

[1539(b)] Manufactures wholly or in chief value of any product described in the preceding item 1539(b), or of any other product of which any synthetic resin or resin-like substance is the chief binding agent__ 21¢ per lb. and 17% ad val.

[409] All articles not specially provided for, wholly or partly manufactured of \* \* \* willow (except \* \* \*):

\* \* \* \* \* \* \*

Other_____ 25% ad val.

This case has been submitted on three exhibits and on stipulated facts. Plaintiffs' exhibit 1 consists of a sample of the imported merchandise, number L 1502–SL. It is a woven basket type of handbag with a lid, straps, and handles of a plastic material simulating leather. It was

stipulated that it is in part of willow and is a manufacture in chief value of polyvinyl chloride in which synthetic resin is the chief binding agent. Although defendant's brief states that the merchandise contains an insignificant and minute portion of willow, and the invoices so indicate, the willow parts have not been identified, and no claim is made for the application of the *de minimis* rule.

Plaintiffs' exhibit 2 in a customs laboratory report, stating:

The plastic portion of the handbag is polyvinyl chloride, with rayon fabric backing. The resin contains 24.2% mineral ash, chiefly calcium carbonate. The resin acts as chief binding agent.

Plaintiffs' exhibit 3 is another customs laboratory report, which states:

The simulated leather straps, lid and hinge of the handbag are composed of a three layered material. The top layer of brown and the middle grey layer are polyvinyl chloride plastic and the back is rayon fabric. The two layers of synthetic resin do not separate easily or completely.

We construe plaintiffs' offer of exhibit 3 without reservation or qualification as a concession that the polyvinyl chloride layers are laminated, and we so find.

The merchandise is described both in paragraphs 1539(b) and 409 and the issue to be decided is, in such circumstances, which paragraph did the Congress intend to govern.

Our appellate court, in *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, 5, C.A.D. 809, divided paragraph 1539(b), *supra*, as enacted, into three provisions we may here summarize as follows:

(1) Laminated products of which any synthetic resin or resin-like substance is the chief binding agent.

(2) Manufactures wholly or in chief value of any of the foregoing laminated products.

(3) Certain other products, not here involved, whether or not laminated.

Defendant says the collector classified the imports in the second group and we may presume this is correct, although the official papers are less specific. It seems clear that the imports are manufactured in chief value of a product referred to in group (1).

Group (1) applies to any other product that meets its description whether or not it is described elsewhere in the act. Group (2) includes any article manufactured from material described in group (1). It must follow that group (2) includes manufactures of group (1) material whether or not such material is described elsewhere, as it covers manufactures "of *any* of the foregoing." The conclusion would seem to be that a manufacture in chief value of a laminated product would not involve equal competition as to specificity between paragraph 1539(b) and a paragraph containing a "not specially provided for" clause as paragraph 409 does, but the former would override the

latter, as we held in *Imperial International Corp.* v. *United States*, 39 Cust. Ct. 240, 243–244, C.D. 1934:

* * * In providing for laminated products as a material Congress used the expression "(whether or not provided for elsewhere in this Act)." Such an expression constitutes language of an "invading" character, and "Every paragraph [of the tariff act] * * * must yield to that language" (*Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367).

Consequently, if the imported merchandise is, in fact, a laminated product material, even if it were composed in chief value of wood, it would, nevertheless, take classification under paragraph 1539(b), supra, as claimed by the defendant, rather than under paragraph 412, as claimed by the plaintiff.

The same result would obtain, however, if the merchandise were held to be a manufacture wholly of such laminated product, provided for in paragraph 1539(b), rather than the laminated product itself. In such case, the competing provisions, i.e., manufactures wholly of laminated products and manufactures in chief value of wood, would be of equal specificity, except that the latter provision contains a "not specially provided for" clause, while the former does not, and, hence, would control the classification.

We have also interpreted paragraph 1539(b) (the third group, involving a nonlaminated article), as overriding the provision in paragraph 216 covering articles composed in part of carbon. *Burgess Battery Co.* v. *United States*, 43 Cust. Ct. 189, C.D. 2125.

Plaintiff argues, as to prevail here it must, that the *Burgess* case was wrongly decided. This argument, however, depends on authority in other contexts that the word "articles" is more specific than the word "manufactures." *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T.D. 41575; *United States* v. *Garlock Packing Co.*, 32 CCPA 79, C.A.D. 289; *D. N. & E. Walter & Co. et al.* v. *United States*, 44 CCPA 144, C.A.D. 652; *W. J. Byrnes & Co. et al.* v. *United States*, 52 Cust. Ct. 159, C.D 2454; *Arnhold Ceramics, Inc.* v. *United States*, 42 Cust. Ct. 277, Abstract 62740. Judge Mollison who wrote the opinion in *Burgess, supra*, preferred, apparently, to follow another line of cases to the effect that "wholly or in chief value of" is more specific than "in part of" language because it creates a more restricted category *Solomon* v. *Arthur*, 102 U.S. 208; *Hartranft* v. *Meyer*, 135 U.S. 237; *Loewenthal & Co.* v. *United States*, 6 Ct. Cust. Appls. 209, T.D. 35464; *International Expediters, Inc.* v. *United States*, 41 CCPA 156, C.A.D. 543. We cannot say he was wrong. We think that to reconcile all the authorities would be impossible and that a sympathetic ascertainment of the intent of the Congress must be made without regard to any rigid rule of giving or trying to give the same word in tariff legislation the same unvarying meaning, regardless of context.

Any canon of interpretation based on the view that the word "article" is more specific than other words has lost its basis in reason and has become a mere arbitrary rule. We have recently considered the use of the word "article" in the provision for a "final list" in the

Customs Simplification Act of 1956, Public Law 927, August 2, 1956. *National Carloading Corporation* v. *United States*, 55 Cust. Ct. 723, A.R.D. 191. We think the Congress which enacted that legislation would have been very much surprised to be told that any item of dutiable merchandise whatsoever would not be an "article" for consideration in preparation of the list. In the legislative history we quote in that case, the words "item" and "article" are used interchangeably.

The Tariff Act of 1930 assesses duty, in title I, section 1, only upon "articles." Our appellate court said, in *United States* v. *Eimer & Amend*, 28 CCPA 10, C.A.D. 117 (pp. 12–13) :

* * * Unquestionably, Congress meant, by employing that language, to include under the word "articles" any provided-for substance, material or thing of whatever kind or character that was imported into this country. As it did in many other places in the act, it there used the word in its broad sense. * * *

* * * Congress, in using the word "articles" clearly meant it to have a broad meaning in some provisions of the tariff act and a restricted meaning in others, * * *.

Accordingly, we cannot adjudicate this case on the basis of the alleged greater specificity of a provision for "articles * * * of willow." The word "article" has no specific tariff meaning to base such a decision on. We cannot find that the use of the word "articles" in paragraph 409 restricts the scope of the paragraph more than the word "merchandise" or "items," e.g., would do. We remain obligated to perform the difficult task of ascertaining and applying the real intent of Congress, not the easy one of construing magic words of fixed and certain application. *National Carloading Corporation* v. *United States, supra; The A. W. Fenton Co., Inc.* v. *United States*, 55 Cust. Ct. 74, C.D. 2554.

The rule of relative specificity is, of course, a rule of construction and yields to legislative intent otherwise shown. *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, T.D. 46078. Here, we can entertain no doubt that the second group under paragraph 1539(b) was necessary to make the creation of the first effective, and the Congress could not have intended it to be impotent when the first group was to override everything. How, therefore, could it have intended a provision elsewhere for "articles" to override this second group, even though it included a "not specially provided for" clause? An examination of the history of paragraph 1539(b), *supra*, may shed light on the intent of Congress in enacting it.

The Tariff Act of 1922 provided in paragraph 1441 for electrical insulators and other articles, wholly or partly manufactured, composed wholly or in chief value of synthetic phenolic resin. Before the enactment of the Tariff Act of 1930, it was pointed out at hearings

before the House Ways and Means Committee that certain patents on Bakelite would expire in March and September 1929 and tariff relief was requested so that the domestic industry would not be swamped by foreign competition. The domestic manufacturers proposed:

All products of which any synthetic resin or resinlike substance mentioned and described in paragraph 28 of this act is the chief binding agent, whether or not elsewhere in this act enumerated, in sheets or plates, 50 cents per pound and 25 per cent ad valorem; all tubes, rods, blocks, and other forms of any of the foregoing products and all other articles in whatever stage of manufacture produced from any of the products, materials, or articles mentioned in this paragraph, $1 per pound and 50 per cent ad valorem. [Hearings before the Committee on Ways and Means, House of Representatives, 70th Congress, second session, vol. 14, pp. 7786–7793.]

The bill as proposed by the Committee and passed by the House provided:

(b) Laminated products (whether or not provided for elsewhere in this Act) of which any synthetic resin or resin-like substance provided for in paragraph 28 is the chief binding agent, in sheets or plates, 25 cents per pound and 30 per centum ad valorem; in rods, tubes, blocks, or other forms, 50 cents per pound and 40 per centum ad valorem; manufactures wholly or in chief value of any of the foregoing, 50 cents per pound and 40 per centum ad valorem.

The comparative print of the bill as passed by the House, and as reported to the Senate, contains the following note (p. 304):

Note.—Laminated products the chief binding agent of which is a synthetic resin or resinlike substance provided for in Par. 28 (p. 15 of this print), if in chief value of synthetic phenolic resin, have been transferred from 1922 Act, Par. 1441 (Bill, Par. 1539(a))—old rate 30 per centum ad valorem; if in chief value of any material other than synthetic phenolic resin they have been transferred from various paragraphs according to the component material of chief value and the nature and description of the article.

At the hearings before a subcommittee of the Senate Finance Committee, certain importers protested the proposed rates of duty and the domestic manufacturers asked for certain changes. (Hearings before a subcommittee of the Committee on Finance, United States Senate, 71st Congress, first session, schedule 15, pp. 731–742.)

The language proposed by the Senate Finance Committee which subsequently became paragraph 1539(b) of the Tariff Act of 1930 provides:

(b) Laminated products (whether or not provided for elsewhere in this Act) of which any synthetic resin or resin-like substance is the chief binding agent, in sheets or plates, 25 cents per pound and 30 per centum ad valorem; in rods, tubes, blocks, strips, blanks, or other forms, 50 cents per pound and 40 per centum ad valorem; manufactures wholly or in chief value of any of the foregoing, or of any other product of which any synthetic resin or resin-like substance is the chief binding agent, 50 cents per pound and 40 per centum ad valorem.

In notes in the comparative print, it is stated (p. 304) :

Note.—Laminated products the chief binding agent of which is a synthetic resin or resin-like substance not provided for in Par. 28, and manufactures in chief value of such products, have been transferred from various paragraphs according to the nature and description of the article or the component material of chief value.

Manufactures wholly or in chief value of nonlaminated products of which any synthetic resin or resin-like substance is the chief binding agent have been transferred from various paragraphs according to the nature and description of the article or the component material of chief value.

It appears from this history that it was the intent of the Congress to bring within the scope of paragraph 1539 (b) all laminated products, all manufactures of such products, in chief value, and all manufactures of nonlaminated products, of which any synthetic resin or resin-like substance was the chief binding agent. Although the language in the provision for manufactures wholly or in chief value of laminated and other products does not contain the invasive language of the provision for laminated products, we think the Congress did not intend the omission to have importance here. Evidently, it thought it had effectively *transferred* group 2 manufactures from other paragraphs. The holding sought by plaintiffs would falsify this expectation.

The language of paragraph 1539 (b), together with its legislative history, indicates that the provision for manufactures wholly or in chief value of laminated products, etc., is at least as specific as the provision in paragraph 409 for all articles, partly manufactured of willow.

We find no language or legislative history under paragraph 409 to indicate that the Congress intended the presence of a small quantity of willow in a product in chief value of a laminated synthetic resin to frustrate its clearly expressed intention as to the tariff treatment of such product. It is clear that this paragraph was expected to "invade" certain other paragraphs when merchandise was in part of material described in paragraph 409, but in chief value of something else. The Summary of Tariff Information, 1929, schedule 4, page 947, that lay before the Congress during consideration of the 1930 act, refers to several court decisions so holding under the 1922 act. But if it was intended to be universally invasive, the words "not specially provided for" become nullities and the purpose of using them not apparent. The rational conclusion is that paragraph 409 was expected to yield before a legislative policy in another paragraph clearly and specifically expressed, but no such policy was involved when the competing paragraph covered materials of chief value, such as bone or paper. This conclusion is strongly reinforced, indeed made irrefutable, by the reference at page 947, *supra*, to the decisions in *United*

*States* v. *Basket Importing Co. et al.*, 15 Ct. Cust. Appls. 161, T.D. 42220; *United States Willow Furniture Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 90, T.D. 40938, both holding that part of paragraph 407 of the 1922 act, the same as the 1930 paragraph 409, does not invade a 1922 act provision for furniture in chief value of wood, by reason of the presence of willow in an imported chair.

In the recent case of *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536, we held that paragraph 409 did not prevail over paragraph 412 because of the presence of an insignificant bamboo component in a manufacture in chief value of wood. Both paragraphs contained a not specially provided for clause and, therefore, the factors decisive in this case were lacking. Absent such factors, the decision went off on the *de minimis* rule, which has not been invoked herein. The issues in the two cases are different, and neither decision would determine the result in the other, but *Connor, supra*, the earlier one, is to a point, a precedent for our holding here that paragraph 409 was not intended to be all invasive.

In view of the foregoing, we conclude that, in the circumstances here involved, the Congress intended paragraph 1539(b) to govern. The protests are overruled. Judgment will be entered accordingly.