## PIERCE *v.* UNITED STATES (No. 53).[1]

1. PRACTICE IN CLASSIFICATIONS.

     The rule that long-continued practice in customs cases should control in the classification of commodities is based on sound reason, but practice can not establish an arbitrary or wholly conclusive classification.

2. CAPERS.

     A review of tariff legislation from 1790 and of the pertinent decisions of courts fails to disclose any legislative purpose or uniform customs practice indicating an intent to classify capers as either pickles or as vegetables prepared or preserved; and capers being a condiment used to flavor vegetables and meats rather than an edible vegetable, they were not dutiable under paragraph 241, tariff act of 1897, but were dutiable as an unenumerated article in whole or in part manufactured, under the provisions of section 6 of that act.

### United States Court of Customs Appeals, January 11, 1911.

TRANSFERRED from United States Circuit Court, District of Massachusetts, G. A. 6201 (T. D. 26849).

[Reversed.]

*Searle & Pillsbury (William E. Waterhouse* on the brief) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Thomas M. Lane* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This importation was of capers. Dutiable classification was made by the collector at the port of Boston as a vegetable prepared or

---

1 Reported in T. D. 31215 (20 Treas. Dec., 90).

preserved under paragraph 241 of the tariff act of 1897, which was in the following language:

241. * * * all vegetables, prepared or preserved, including pickles and sauces of all kinds, not specially provided for in this act, and fish paste or sauce, forty per centum ad valorem.

The provision is under schedule G, which provides for "agricultural products" and a specific subhead thereunder of "farm and field products."

The appellant maintains that the merchandise is properly free as drugs in a crude state under paragraph 548; or drugs advanced in value or condition under paragraph 20; or as a raw or unenumerated article not specially provided for under section 6; or as an article manufactured in whole or in part not specially provided for under the last cited section.

The Board of General Appraisers and the United States Circuit Court for the District of Massachusetts found and held against the appellant, and the case comes here by transfer from that circuit.

Capers consist of the well-known condiment used upon the table for the seasoning of meats and salads. They are the buds of the caper bush, which is a trailing vine grown in southern Europe and northern Africa. As imported they are put up in vinegar, largely in barrels and to some extent in bottles. The bottled importations are ready for use. The importations in barrels are packed in vinegar, it is alleged, for temporary preservation during shipment, and after arrival are washed so that all trace of the original vinegar is destroyed, and are then repacked in bottles with fresh vinegar for sale. They have a certain therapeutic value. The taste is an agreeable pungent one, and while long in use as a condiment and an ingredient of sauces the record discloses that if eaten in any considerable quantities they would be unhealthful, if not poisonous.

The article of merchandise has been the subject of tariff consideration from the earliest history of the Government. Incident to this fact, counsel for the Government, who maintains that the merchandise was properly assessed by the collector, asserts that the classification of the collector is supported by uninterrupted legislation and customs practice from 1790 to date, and, therefore, under the recent decision in the case of Komada v. United States (215 U. S., 392) should not be interrupted.

The principle of long-continued practice in customs cases as controlling the classification of merchandise has recently been extensively invoked. It, however, is not an arbitrary or conclusive rule, but can be invoked only in cases of doubtful meaning, as one of the aids in the ascertainment of legislative intent. It is based upon sound reason, first, because it represents the consensus of judgment of those experienced in the administration of the customs and familiar

with imported merchandise, and whose opinions, therefore, in the premises, are necessarily of great value. The fact, too, that official action is always supported by the presumption of correctness likewise adds respect to long-continued uniform practice exercised by numerous experienced officials. The rule, likewise, is undoubtedly supported by the salutary principle that where business has accommodated itself to certain effective official rulings, such should not be interrupted except in clear cases.

Where, however, the reason fails, the rule fails. In the case at bar certainly from 1790 to 1883 the reasons supporting this rule of interpretation did not exist. During all this period capers were not assessed as pickles. They were expressly provided for by Congress as capers eo nomine. There was no occasion for the exercise of any official judgment by way of classification. While they were associated in the paragraph with pickles there was no official determination that they were or were not pickles.

Less comfort is afforded the contention of the Government from the legislative construction sought. The precise contention of the Assistant Attorney General is as follows:

It thus appears that from 1790 to 1883, a period of 93 years, Congress expressly placed capers in the same dutiable class with pickles and taxed them at the same rate; and that, though capers have not been specially named in the law of 1883, the practice of classifying them as pickles has continued under that and the three following acts.

A reference to the precise provisions adopted by Congress may be profitable, as we regard the point made by the Government of legislative designation and long-continued practice the strongest urged.

The provision in the act of 1790 was as follows:

SECTION 1. * * * all fruits and comfits, olives, capers, and pickles of every sort, * * * ten per centum ad valorem. * * *

In the tariff act of 1816:

Fifth. * * * ; salad oil, pickles, capers, olives, mustard, * * * thirty per centum ad valorem.

The only legislative interpretation that could be here invoked is that of noscitur a sociis, which obviously in these acts is without aid to the Government. The context of each paragraph shows such a variety of things specified that no uniform classification can be deducted. It can not be any more said that capers were pickles than that they were olives, or fruits, or salad oil, or mustard. The only legislative deduction possible from this collocation is that Congress was assembling several varieties of articles in one paragraph or sentence at one rate without regard to classification; and that Congress deemed "capers" as different from "pickles" as from olives, or fruits, or salad oil, or mustard.

In the tariff act of 1832 capers were made free of duty, but pickles were not, and therefore, so far as we are able to discover, capers were retained upon the dutiable list. Evidently by such legislation Congress indicated an intention to differentiate pickles from capers. This continued for 10 years, until by the act of 1842 the following provision was enacted:

SEC. 8, Par. 4. * * * On pickles, capers, and sauces of all kinds, not otherwise enumerated, thirty per centum ad valorem.

And by the act of 1846, as follows:

Schedule C. * * * Capers, pickles, and sauces of all kinds, not otherwise provided for, *thirty* per centum ad valorem.

And—

Schedule B. * * * Prepared vegetables, * * * *forty* per centum ad valorem.

This is the first appearance in the tariff acts of the term "prepared vegetables," so far as we are able to discover.

By the tariff act of 1862, section 13, an additional 5 per cent was levied.

SEC. 13. * * * Capers, pickles, and sauces of all kinds. * * *

There seems to have been no further legislation specifically naming these articles until the tariff act of 1883. In the act of 1883 it was provided by separate paragraphs, as follows:

Schedule G, Par. 284. Pickles and sauces of all kinds, * * * *thirty-five* per centum ad valorem.

Schedule G, Par. 287. Vegetables, prepared or preserved, of all kinds, * * * *thirty* per centum ad valorem.

Schedule G, Par. 286. Vegetables, in their natural state, or in salt or brine, * * * ten per centum ad valorem.

Capers, by specific designation, were dropped from the tariff act of 1883. It will be noted in passing that a different rate of duty was levied upon "vegetables in their natural state," 10 per cent, and upon "vegetables, prepared or preserved," 30 per cent, and "pickles and sauces of all kinds," 35 per cent, indicating beyond controversy that Congress regarded them for dutiable purposes as separate and distinct classes of merchandise. Precisely the same distinction was drawn between capers and pickles as against prepared vegetables in the act of 1846. So that Congress, down to and including the act of 1883, not only separately specified capers and pickles and vegetables, prepared and preserved, but at times levied different rates of duty upon them.

The highest authority of contemporary construction of paragraph 284 of the act of 1883 was as rendered in Bogle *v.* Magone (40 Fed. Rep., 226), wherein Lacombe, judge in the circuit court for the southern district of New York, held that there was nothing about the language employed by Congress which indicated that the words

were used in a commercial sense, and that the popular sense of the words was plain and unequivocal, and for that reason he excluded testimony offered to prove the commercial usage of the words of the statute.

On appeal to the Supreme Court of the United States in Bogle *v.* Magone (152 U. S., 623) that court reversed the decision of the lower court, directing a new trial and stating that the court was of the opinion that the evidence of the nature and the use of the articles and their commercial designation would have warranted a jury in finding that they were not within the provisions of paragraph 214, and expressed the opinion of the Supreme Court that the merchandise in question was subject to duty under another and more specific clause of the tariff act. While the court did not expressly declare whether or not, in its opinion, paragraph 214 was used in a limited commercial sense or in its broader scope of ordinary language, it expressly refused to exclude evidence going to show that the terms therein employed were terms of commercial and limited usage. No further record is had of the case.

In Nix *v.* Hedden (149 U. S., 304) the Supreme Court had under consideration and construed paragraph 286 of the act of 1883, and in so doing laid down a broad and general definition of the word "vegetables" as used in that act. It held that vegetables were such things as were grown in the kitchen garden, and which are eaten cooked or raw, like potatoes, carrots, parsnips, turnips, etc., usually served at dinner with or after the soup, fish, or meats, which constitute the principal part of the repast. This definition by the court of last resort limits the scope of the words used in the tariff act of 1883 to such vegetables as are ordinarily grown in the garden and used upon the table for food purposes.

During the life of the tariff act of 1883 capers were probably classed as "pickles or sauces of all kinds," as appears from the record. It does not appear, however, that the question of their classification was ever contested under that act.

In the state of this judicial interpretation the tariff act of 1890 was enacted, which repealed the act of 1883.

The cognate provision of the tariff act of 1890 was as follows:

287. Vegetables of all kinds, prepared or preserved, *including* pickles and sauces of all kinds, not specially provided for in this act. * * *

This was the consolidation of the two paragraphs of the act of 1883 with the conjunction *"including."* It is particularly pertinent, in view of the claims of respective counsel, to note the contemporaneous construction placed upon this provision by customs officials, for the reason that these provisions of the act of 1890, being modified by the act of 1894, were practically reenacted by the act of 1897, here under consideration.

The highest authoritative adjudication under that act was the construction placed thereon by Lacombe, circuit judge for the southern district of New York, in the case In re Johnson (56 Fed. Rep., 822), wherein the court said if Congress intended by the use of the phrase that the term "vegetables of all kinds prepared or preserved, *including* pickles and sauces of all kinds," to cover this particular article, bloater paste, they have conspicuously failed to manifest their intention in the language they have used.

The use of the word "including," and the placing of the clause in the paragraph referring to vegetables of all kinds, coupled with the circumstances that it is grouped with other provisions under the subhead of "farm and field products," would make it impossible for this court to hold that it included a fish sauce, without legislating on the subject, which this court does not sit here to do.

The act of 1894, paragraph 198, changed the phraseology of the act of 1890 by substituting the word "and" for the word "including" in the act of 1890, so that the provision read:

198. * * * Vegetables, prepared or preserved, * * * *and* pickles or sauces of all kinds, * * *

The interpretation of this by customs officials and tribunals was that it enlarged the scope of the act of 1890. See In re Park & Tilford, G. A. 3671 (T. D. 17623), and In re McDowell, G. A. 4703 (T. D. 22176).

In the kindred provision of the act of 1897, paragraph 241, quoted supra, returned to the more restricted phraseology of paragraph 287 of the act of 1890, and practically repeated that paragraph.

All of the previous acts, and the construction placed upon them by customs officials and courts deciding customs issues being before the Congress in 1897, and the Congress having expressly chosen therefrom the restricted language of paragraph 287 of the act of 1890, and being advised of the more narrow construction placed thereon by the courts and customs officials, leaves no escape from the proposition that Congress intended the use of this paragraph in the act of 1897 in the restricted sense in which it was used in the act of 1890 as construed by the proper officers and tribunals. Having before us, therefore, for construction the precise language of that act, repeated in the act of 1897, under the well-settled rules of statutory interpretation, it is deemed that Congress adopted the construction placed upon the act of 1890. This construction was to the effect that the word "vegetables" as used therein and "pickles" were restricted to those familiarly known as such, those grown in the garden and field, and those commonly used upon the table as such, and did not include condiments such as are used solely for giving zest to foods.

As was clearly pointed out by the Board of General Appraisers, Howell, G. A., the fact that Congress has specifically included fish

paste and sauce in the act of 1897 rather emphasizes the exclusion of all other sauces than those made from vegetables and fish, and the fact that Congress intended the use of the words "vegetables" and "pickles" in their limited sense the word *"including,"* therefore, as used in this paragraph of the act of 1897, was used by way of specification and not by way of addition of species to the previous genus, and both the words "vegetables" and "pickles" as used in this paragraph are entitled to be and were used in the restricted sense above stated.

This view concisely concurs with that view reached by the Circuit Court of Appeals for the Second Circuit, Von Bremen *v.* United States (168 Fed. Rep., 889), wherein it was held that truffles were not vegetables within purview of paragraph 241 of the tariff act of 1897. The court in that case expressly announces that it follows the higher authority in Nix *v.* Hedden (149 U. S., 304), and particularly criticizes and overrules the case of Park *v.* United States (61 Fed. Rep., 398), wherein truffles were held to be vegetables under the act of 1890.

So far as the record shows, with one exception, the practice has been, during the 12 years prior to this issue being made, to assess capers as "prepared or preserved vegetables."

Inasmuch as capers and pickles were from 1790 to 1883 specifically named by Congress, thereby, under the rule disavowing surplusage, being differentiated, and capers were under the act of 1883 classed as "pickles," while under the act of 1897 they were classed as "vegetables prepared or preserved," two subjects in various acts of Congress differentiated and given different rates of duty (1846 and 1883), we are unable to discover any legislative purpose or uniform customs practice indicating an intent to classify capers as either pickles or as vegetables prepared or preserved.

The court is of the opinion that the views expressed in the Von Bremen case, supra, are more persuasive; that the pickles, sauces, and vegetables provided for in paragraph 241 are confined to the garden and table varieties of edibles of those classes in which capers are not included, but are condiments used only for seasoning purposes.

This court, therefore, is of the opinion that capers, being a condiment used to flavor vegetables and meats rather than to be eaten as a vegetable, is not included within the provisions of paragraph 241 of the tariff act of 1897. It is not a vegetable, nor is it a vegetable pickle in the sense those words are used in the tariff act. Its particular classification will, therefore, be determined from its condition as imported. It seems agreed on the record that capers are imported in barrels chiefly, in which they are put up in vinegar for purpose of preservation. Let it be admitted for the purpose of argument that this preservation is a temporary one. They are cleansed upon arrival

and put in bottles with new vinegar for complete preservation and use. Whether the article is unmanufactured, or in whole or in part manufactured, is then to be determined from that condition. Evidently and indisputably the temporary preservation in transit by vinegar must be sufficiently effective to preserve them for a time at least. The change of this vinegar and the addition of other vinegar is but a continuation of the processes of manufacture or preservation already undertaken. We can not see how it can be said that the completion of a process already undertaken is not the completion of a partly accomplished process, and the result pickled capers. In accordance with all the lexicographic definitions they are, in fact, pickles, although they are excluded from those pickles provided for in paragraph 241 by the character of the pickles therein provided for. Accordingly this court is of the opinion that the merchandise is an article wholly or in part manufactured, and dutiable, as claimed by the appellant, as an unenumerated article in whole or in part manufactured, under the provisions of section 6 of the tariff act of 1897.

The imported article is material for, rather than, a sauce, and therefore similitude does not apply.

*Reversed.*