(C.D. 2409)

BRUCE DUNCAN CO., INC., a/c STANDARD COMMODITIES IMPORT & EXPORT CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 21, 1963)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Murray Sklaroff* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This is an action against the decision of the collector of customs at Los Angeles, classifying certain rayon labels under the provisions of paragraph 1312 of the Tariff Act of 1930, as modified

by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as manufactures in chief value of rayon or other synthetic textile, not specially provided for, and assessing duty thereon at the rate of 30 per centum ad valorem and 25 cents per pound.

It is the contention of plaintiff that said rayon labels are more specifically provided for under the provision for fabrics, with fast edges, not exceeding 12 inches in width, and articles made therefrom, contained in paragraph 1308 of the Tariff Act of 1930, as modified by said sixth protocol, *supra.*

The pertinent portions of the paragraphs involved herein read as follows:

Paragraph 1312 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding 1 inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for (except gill nets or netting) _____ 25¢ per lb. and 30% ad val.

Paragraph 1308 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Fabrics (except ribbons), with fast edges, not exceeding 12 inches in width, and articles made therefrom; garters, suspenders, and braces; all the foregoing wholly or in chief value of rayon or other synthetic textile, or of rayon or other synthetic textile and india rubber, and not specially provided for, whether or not Jacquard-figured___ 25¢ per lb. and 19% ad val.

It is not disputed that the merchandise at bar is composed of rayon and is properly classifiable under the thirteenth schedule of the Tariff Act of 1930. It is also not disputed that rayon labels had been uniformly classified under the provisions of paragraph 1308 of the Tariff Act of 1930, by virtue of a long-continued established practice, and, accordingly, a change of practice was put into effect in 1959 by T.D. 54837(2), 94 Treas. Dec. 214, 215. It was conceded by plaintiff that the notice of change of practice issued was in accordance with the provisions of section 315 of the Tariff Act of 1930, as amended.

Counsel for the respective parties have set forth their contentions as follows:

Plaintiffs contend (1), that it was clearly the intention of Congress to include woven rayon labels under the provision for fabrics with fast edges and articles made therefrom in Par. 1308, *supra,* just as woven labels of other materials were included by Congress under comparable narrow-ware provisions of other schedules of the Tariff Act; (2), that, in any event, the woven labels at issue herein were *not finished labels* as they came from the narrow-ware looms, that there *was* a pre-existing fabric which came from the looms, from which the labels at bar

were made, and that the imported labels are in fact articles made from fabrics with fast edges, not exceeding 12 inches in width; and (3), that the notice of change of practice published in T.D. 54837(2), *supra*, covered *only* labels in fabric form, designed *to be cut* between the designs and used as labels, and did not cover the *cut and* finished labels imported herein. [Italics quoted.]

The Government's contentions are that the labels are not made from any fabric *per se*, but the fabric and labels came into being in one and the same instant; that there was no preexistent material and, hence, the merchandise cannot be classified within the purview of paragraph 1308, *supra*.

The record herein bears out the contention of defendant that the labels and fabric came into being at the same time. The record also establishes that the imported labels, after being manufactured on a continuous roll, are then examined and the defective products removed. They are also further processed, i.e., cut and folded, cut and pinked, cut and mitered, and only about 1 per centum are imported on rolls. An examination of such merchandise establishes a line of demarcation is woven into the roll to indicate the place at which it is to be *cut*.

The first contention of plaintiff with respect to rayon labels being classified under the smallwares provision for fabrics, with fast edges, not exceeding 12 inches in width, and articles made therefrom, contained in paragraph 1308 of said act for a considerable length of time, bears some consideration.

The prime function of this court is to ascertain the legislative intent embodied within the paragraphs of the tariff act involved in this litigation. On its face, the provision for fabrics, with fast edges, not exceeding 12 inches in width and articles made therefrom, contained in paragraph 1308, *supra*, does not appear to be ambiguous, and ordinarily where the language of a statute is clear, it is unnecessary to use rules of construction. However, in view of the long-continued practice of classifying rayon labels under the provisions of paragraph 1308, which necessitated a notice of change of practice, it would appear that the provision is not so clear as to dismiss any necessity to review the legislative history of this provision for the purpose of ascertaining the intent of Congress in enacting it. Our appellate court, in the case of *United States* v. *Durst Mfg. Co., Inc.*, 46 CCPA 74, C.A.D. 700, in considering rules of construction, stated that the function of the court is to ascertain the legislative intent, and once the said intent is apparent, rules of construction are not controlling. The court then set forth the following quotation of the United States Supreme Court in *United States et al.* v. *American Trucking Associations, Inc., et al.*, 310 U.S. 534:

* * * Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the

policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. * * *

The court, in the *Durst* case, *supra*, also concluded as follows:

It is too well settled to require citation that resort to legislative history to determine the Congressional intent is proper where the statute applied is found to be ambiguous. We need decide no more than that the statutory term is ambiguous, i.e., that it has more than one common meaning, to justify reference to the legislative background herein.

In view of the foregoing, we are of the opinion that a review of the legislative background would be of considerable assistance in ascertaining the intent of Congress in enacting the legislation here under consideration.

Before considering the legislative history, it is interesting to note that the Tariff Act of 1930, as enacted, contains provisions for "fabrics, with fast edges, not exceeding twelve inches in width, and articles made therefrom," in the cotton schedule, paragraph 912; in the vegetable fiber schedule, paragraph 1015; in the wool schedule, paragraph 1113; in the silk schedule, paragraph 1207; as well as in the rayon schedule, paragraph 1308, involved herein. It is also interesting to note that the Tariff Act of 1922, which did not have a rayon schedule, had substantially the same provisions, so far as are pertinent herein, in the various paragraphs covering each textile component. It is further noted that the provision for labels for clothing provided for in the cotton schedule goes back to the Tariff Act of 1897. While the provision in the act of 1897 is couched in different language it does appear in the provision which is often alluded to as the smallwares paragraph.

The Summary of Tariff Information, compiled by the United States Tariff Commission and printed for the use of the Committee on Ways and Means of the House of Representatives, in enacting what subsequently became the Tariff Act of 1930, refers to the smallwares paragraphs in each of the textile provisions covering cotton, flax, wool, and silk. Under the silk schedule, the Summary contains the following information:

### SILK SMALL WARES OTHER THAN RIBBONS

Description and uses.—Silk small wares, other than ribbons, covered by paragraph 1207 include bandings and hat bands, belting and belts, bindings, tubings, cords, tassels, garters, suspenders, and braces. Silk-covered elastic banding and articles made therefrom are included in this group.

The Summary further sets forth the following information under the heading "Decisions":

DECISIONS

*Hat labels*, returned by the appraiser as in chief value of artificial silk and assessed at 45 cents per pound and 60 percent ad valorem under paragraph 1213 and claimed to be composed in chief value of cotton dutiable at 50 percent ad valorem under paragraph 913 or alternatively under paragraph 1205 or 1207, were found on analysis to be composed of silk and artificial silk, silk chief value, and therefore dutiable as silk fabrics with fast edges not exceeding 12 inches in width at 55 percent ad valorem under paragraph 1207. (Ab. 48510.) *Labels* cut from narrow fabrics composed of silk were held dutiable at 55 percent under paragraph 1207 rather than at 60 percent ad valorem under paragraph 1211. (Abs. 50660, 51860, (N) 2537.) On the authority of Abstract 48510, supra, *hat labels* in chief value of silk were found to be dutiable under paragraph 1207 but the protests were overruled because claim thereunder was not made. (Ab. 52002.) On the same authority *hat labels* in chief value of silk were held dutiable under paragraph 1207 rather than under paragraph 1213. (Ab. (N) 331.) * * *

The notice of change of practice, T.D. 54837, issued pursuant to section 315 of the Tariff Act of 1930, as amended, states in part that "* * * this ruling will result in the assessment of duty at a higher rate than has heretofore been assessed under an established and uniform practice * * *." That it is an established and uniform practice cannot be doubted in view of the notice and the decisions cited, *supra*, in the Summary of Tariff Information, 1929, covering labels. It, therefore, is fair to assume the decisions of the court of 1925 have been followed and that labels have been classified, as claimed herein, for at least some 34 years until 1959 when the change of practice notice was issued.

It is of interest to note that certain silk labels cut from narrow fabrics, Abstracts 50660, 51860, and (N) 2537, were held to be properly dutiable under the provisions of paragraph 1207 of the Tariff Act of 1922, as fabrics, with fast edges, not exceeding 12 inches in width. Accordingly, the court, in the above decisions, held said labels to fall within the narrow "fabrics" provision and not as "articles" under said provision. Therefore, even if it is the position of defendant that the labels were not made from the fabric described therein, it is established by these decisions that said labels belong under the narrow-ware "fabric" provision.

The decisions referred to above also reflect the fact that the appraiser had virtually conceded error in classification in his amended report. This substantiates the fact that in addition to the judicial interpretation there was in existence an administrative practice of classifying labels within the purview of the narrow wares provision, for a period actually in excess of the 34 years which the court heretofore indicated could be fairly assumed to have existed.

Under the cotton schedule, the Summary of Tariff Information, 1929, contains the following information:

### COTTON SMALL WARES AND BELTING FOR MACHINERY

Description and uses.—Paragraph 913 includes narrow woven fabrics with fast edges which have not been ornamented after leaving the loom, manufactures of such narrow woven fabrics, and certain articles made by braiding and twisting. These "small wares" are confined mainly to those of which cotton is the material of chief value. In addition to small wares proper, paragraph 913 includes belting for machinery.

"Fabrics with fact edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, and webbings, are made on narrow-ware looms which produce a number of them simultaneously. "Articles made therefrom" include bands, belts, cartridge belts, gun slings, webs, girths, straps, reins, brake linings, etc. Tubings are tubular woven products of narrow-ware looms, and are used in stem work in the manufacture of artificial flowers, as bone casings in corsets, and for other purposes. Tubings for electrical insulation purposes, known as "sleevings," are produced on braiding machines. Garters, suspenders, and braces are made from narrow wares, mainly from elastic and nonelastic webbings, some types also calling for braided articles.

\* \* \* \* \* \* \*

Labels for garments or other articles, provided for in this paragraph, refers to woven labels. These are woven, with fast edges, on narrow-ware looms equipped with Jacquards.

\* \* \* \* \* \* \*

An analysis of the Summary of Tariff Information, 1921, prepared by the Tariff Commission for the use of Congress in enacting the Tariff Act of 1922, likewise gives information on the smallwares provisions in the various textile paragraphs and in instances refers back to the information contained in the cotton schedule, proposed paragraph 912 of the Tariff Act of 1922, which is as follows:

### COTTON SMALL WARES

Description and uses.—Paragraph 912 includes narrow woven fabrics which have not been ornamented after leaving the loom, manufactures of such narrow woven fabrics, and certain articles made by braiding or twisting together yarns or threads. These "small wares" are confined mainly to those of which cotton is the component material of chief value. Similar small-wares paragraphs are to be found in the other three textile schedules.

\* \* \* \* \* \* \*

Important changes in classification.—This is the small-wares paragraph of the cotton schedule, and, with few exceptions, is confined to products of the narrow-ware or ribbon loom and to articles made from such products. It is therefore appropriately begun with the words "Fabrics with fast edges, not exceeding twelve inches in width, and articles made therefrom." In both manufacture and trade woven fabrics wider than 12 inches are known as cloth.

Fabrics with fast edges not exceeding 12 inches in width necessarily include all narrow woven wares and it is not necessary to mention bandings, beltings, bindings, webbings, tapes, ribbons, or other specific articles. Narrow strips cut

from cloth can not be so included, because they are not made with fast edges, and they would be dutiable as the cloth of which they are made. Articles made from narrow woven fabrics necessarily include bands, belts, webs, etc., without specific mention.

\* \* \* \* \* \* \*

\* \*· \* Separate rates are also provided for \* \* \*; for labels for garments or other articles; \* \* \*.

The principal difference between paragraph 262 of the act of 1913 and paragraph 912 of H.R. 7456 is not in the class of articles included, but in the wording which clarifies the phraseology relating to narrow woven fabrics and articles made therefrom.

\* \* \* \* \* \* \*

The description of fabrics, with fast edges, under description and uses of cotton small wares is set forth in substantially the same language in the 1921 Summary, as in the 1929 Summary.

From the foregoing, it is quite apparent that Congress was aware of the distinction between smallwares and cloth. It is also apparent that Congress, prior to the enactment of the Tariff Act of 1930, had actual notice of the cases involving labels cut from smallwares fabrics which had been decided under the Tariff Act of 1922 and held to be dutiable under paragraph 1207 of said act. In spite of this, Congress enacted substantially the same provisions in the textile paragraphs covering smallwares. Of course, as indicated, *supra*, prior to 1930, there was no schedule covering rayon or synthetic textiles, but Congress in so providing such a schedule did provide a paragraph covering smallwares and utilized substantially the same language as was utilized in the other textile schedules. This, in our opinion, constitutes legislative ratification of judicial interpretation. *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T.D. 43133; *United States* v. *Guth Stern & Co., Inc.*, 21 CCPA 246, T.D. 46777.

The principle of long-continued practice and the reasons for its existence were clearly set forth by our appellate court in *Pierce* v. *United States*, 1 Ct. Cust. Appls. 171, T.D. 31215, wherein the court made the following observations:

\* \* \* It is based upon sound reason, first, because it represents the consensus of judgment of those experienced in the administration of the customs and familiar with imported merchandise, and whose opinions, therefore, in the premises, are necessarily of great value. The fact, too, that official action is always supported by the presumption of correctness likewise adds respect to long-continued uniform practice exercised by numerous experienced officials. The rule, likewise, is undoubtedly supported by the salutary principle that where business has accommodated itself to certain effective official rulings, such should not be interrupted except in clear cases.

When Congress had actual notice of the judicial interpretation and reenacted a provision in a subsequent tariff act, it is a clear demon-

stration of congressional intent. The intent we believe was to include rayon labels within the purview of paragraph 1308, *supra*.

As indicated, *supra*, the smallwares provisions of the Tariff Act of 1930, for cotton, paragraph 912, and similar provisions in tariff acts as far back as 1897, provided for labels for garments. The Summary of Tariff Information, 1921, under the various other textile schedules, refers back to the cotton schedule to indicate what was intended to be covered by the smallwares provisions. This intent is of long standing and clearly establishes to the satisfaction of this court that rayon labels were intended to be covered by the smallwares provisions of the Tariff Act of 1930.

Although we have referred to labels in a general category for the purpose of classification, we believe that special consideration ought to be given to those labels imported on a roll, as distinguished from those imported after having been cut, cut and folded, or cut and mitered. Since there is a line or demarcation on the rolls of labels, they are for tariff purposes considered as having been imported as individual labels and their treatment would be the same as those completely finished labels. *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T.D. 34138; *United States* v. *The Harding Co.*, 21 CCPA 307, T.D. 46830. The reasoning set forth, *supra*, with respect to the completely finished labels, therefore, applies equally to those imported on rolls with lines of demarcation indicating where the labels are to be cut apart.

The case of *Swedish Venetian Blinds Co.* v. *United States*, 24 CCPA 20, T.D. 48291, involving cotton ladder tapes is distinguishable from the case at bar, since it is clearly the intention of Congress to include labels in the smallwares provisions of the tariff act, whereas the congressional intent was not clearly evidenced, as including within said provision, venetian blind ladder tapes.

The same is true in the case of *Curtis & Von Bernuth Mfg. Co.* v. *United States*, 22 CCPA 651, T.D. 47633. The court therein, after reviewing the Summary of Tariff Information, 1921, concluded that they found nothing in the legislative history to indicate that Congress intended the articles there under consideration to fall within the purview of paragraph 1111, involved therein.

For the reasons heretofore advanced, we are of the opinion and hold the merchandise here involved is properly dutiable under the provisions of paragraph 1308 of the Tariff Act of 1930, as modified, *supra*, at 25 cents per pound and 19 per centum ad valorem as fabrics, with fast edges, not exceeding 12 inches in width, and articles made therefrom. The claim in the protest in conformity with the foregoing is sustained. All other claims are, however, overruled.

Judgment will be rendered accordingly.