(C.D. 2454)

W. J. BYRNES & Co.
SILVERCRAFT HOLLYWOOD, LTD. } v. UNITED STATES

United States Customs Court, First Division

(Decided May 12, 1964)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Herbert L. Warren*, trial attorneys), for the defendant.

WILSON, Judge: The merchandise involved in the case at bar consists of certain items, invoiced as "Toyo Paper Bags, Handcrocheted, Wangee frame and Handle" and "Toyo Paper Bags, Wood Frame Bag, w/Wangee Handle, Flower decoration," imported from Japan. The collector classified the merchandise under paragraph 409 of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53877, supplemented by T.D. 53865, under the provision therein for "All articles not specially provided for, wholly or partly manufactured of * * * bamboo * * * Other" at the rate of 25 per centum ad valorem. The plaintiffs herein claim the merchandise properly dutiable at the rate of 2½ cents per pound and 10 per centum ad valorem under paragraph 1405 of said act, as modified, *supra*, as "Bags and other articles * * * not specially provided for * * * which are dutiable under paragraph 1405 of the Tariff Act of 1930, by reason of being composed wholly or in chief value of any paper specified in that paragraph." Alternatively, plaintiffs claim the merchandise properly dutiable under paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by T.D. 52462, at the rate of 17½ per centum ad valorem as manufactures of paper, or of which paper is the component material of chief value, not specially provided for.

The pertinent provisions of the tariff act are as follows:

Paragraph 409, Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, *supra:*

All articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow (except tennis-racket frames valued at $1.75 or more each) :
> Woven or partly assembled material suitable for use in making porch or window blinds, curtains, screens, or shades_____ 35% ad val.
> Other_____ 25% ad val.

Paragraph 1405 of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, *supra:*

Bags and other articles (not including printed matter), not specially provided for, which are dutiable under paragraph 1405, Tariff Act of 1930, by reason of being composed wholly or in chief value of any paper specified in that paragraph_____ 2½¢ per lb. and 10% ad val.

Paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, *supra:*

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for * * *_____ 17½% ad val.

Plaintiffs introduced in evidence a lady's toyo paper handbag, stated to be representative of the merchandise under consideration, with the exception that the exhibit in question has a wood frame instead of the wangee handle (plaintiffs' exhibit 1). It was stipulated that the said exhibit is in chief value of paper (R. 5).

Mr. Ben Silverstein, general partner of Silvercraft Hollywood, Ltd., importer of the involved merchandise, who, it appears, had designed and purchased the handbags in question, was the only witness called by the plaintiffs (R. 5). Describing the exhibit in evidence, Mr. Silverstein testified that the article is made of an outer cover of woven toyo paper (R. 6), cardboard paper, and a cloth lining that covers the cardboard (R. 7). The cardboard paper "re-enforces the body of the handbag so she will stand up, and it has a foundation" (R. 7). On cross-examination, plaintiffs' witness testified as follows:

X Q. Do you think you could describe for us the steps of its manufacture as you've observed it?—A. Yes, sir. This toyo paper is laid on a table——

X Q. Is it lined?—A. The toyo paper is not lined.

X Q. Is it re-enforced at that time?—A. It's supposed to be re-enforced so that it would have body.

X Q. With what?—A. With paper, with the same paper itself. The weaving of the paper has to be woven so it's re-enforced.

X Q. The paper is re-enforced, as you define it, because it's woven of itself?—A. That's right.

X Q. All right. There's no cloth on the paper at that time?—A. There is no cloth on that paper, sir. [R. 8.]

The record further discloses that the paper is then cut by the pattern, and the trim or crocheted part is cemented to the paper (R. 8). Then the cloth lining is glued to a cardboard back at the top and bottom of the cardboard (R. 9). The outer surface (the toyo paper), the cardboard, and cloth lining are then stitched together.

In order to establish that the imported toyo handbags are properly classifiable under paragraph 1405 of the Tariff Act of 1930, as modified, plaintiffs, in this case, must show that the article under consideration is "composed wholly or in chief value of any paper specified in that paragraph." Specifically, plaintiffs claim herein that the handbags in question are in chief value of cloth-lined or reinforced paper, as specified in paragraph 1405 of the tariff act. There is no testimony in the record, however, tending to support the claim that the involved merchandise is in chief value of cloth-lined papers. There remains, therefore, for determination the question whether the plaintiffs have established that the merchandise is in chief value of "reinforced" paper.

Plaintiffs initially direct our attention to the fact that the outside of the toyo paper bag is "reinforced" with the cardboard backing. However, in our opinion, the fact that cardboard may reinforce the outside of the toyo paper bag is not determinative of the issue in this case, where plaintiffs have the burden of establishing that the bag is made of reinforced paper. It is the paper contained in the bag and not the bag or article itself which must be "reinforced" to warrant classification of the involved merchandise in accordance with the provisions of the tariff act under which plaintiffs claim.

The plaintiffs herein further contend that the provision for bags made of reinforced paper includes paper which is "reinforced" by a weaving process, asserting, in their brief, that "no further material has to be added to the paper to get it to a reinforced condition"; and that "the material having reinforced itself should be considered as reinforced paper." In this connection, the plaintiffs' witness testified, on cross-examination, as heretofore noted, that the toyo paper is not lined, and then stated "It's supposed to be re-enforced so that it would have body" "with the same paper itself" (R. 8). The witness further testified that the paper is reinforced "because it's woven of itself." We are, therefore, led to an inquiry as to what constitutes reinforced paper, as contemplated in the tariff provisions for such item.

In the Summary of Tariff Information, 1929, discussing provisions of the predecessor Tariff Act of 1922, relative to "CLOTH LINED OR REINFORCED PAPER," volume 2, page 1829, we find:

### CLOTH LINED OR REINFORCED PAPER

**Description and uses.**—Cloth-lined paper is a high-grade paper backed by a strong textile. It is used for labels, tags, and tabs and to some extent for maps and tickets. Other types of reinforced paper are those to which lines of twine or wire have been pasted to afford additional strength.

and, in the Dictionary of Tariff Information, 1924, page 549:

Cloth-lined or reinforced paper is lined with cloth or reinforced by string or some other substance. This paper is used where an especially strong, non-tearable variety of envelope or packing paper is needed, but there are also cheaper grades, which are not very durable.

Indicative but not necessarily conclusive as to the meaning to be applied to cloth-lined "reinforced" paper as respecting the imported articles, is the information contained in the 1948 Summaries of Tariff Information, volume 14, page 94, as follows:

Cloth-lined paper is a good-quality book or coated paper combined with an adhesive to a closely woven fabric. Reinforced paper usually is a heavy-weight wrapping paper combined with asphalt to a loosely woven fabric and having waterproof qualities; another type of reinforced paper consists of a network of cords combined with asphalt and attached to two covering sheets of heavy wrapping paper and having the quality of flexibility. Cloth-lined paper is used

chiefly in the manufacture of tags, maps, envelopes, and children's books. Reinforced paper is used as a protective wrapping.

In our opinion, the information contained in the above summaries, specifically that given in the 1929 Summary of Tariff Information, *supra*, indicates that the toyo paper in the handbags here under consideration is not "reinforced" paper. The information in the 1929 summary was available to Congress before passage of the 1930 tariff act. It would appear that Congress, in paragraph 1405 of the Tariff Act of 1930, clearly contemplated that paper, in order to be accorded the meaning of "reinforced" paper, must be either lined or reinforced with another substance. In our opinion, the toyo paper which is woven so as to "reinforce itself" is not within the definition of reinforced paper, as intended by Congress under the provisions of paragraph 1405 of the tariff act. Accordingly, it has not been established that the imported handbags are composed of reinforced paper, as specified in said paragraph. In addition, it has not been established in this record that the article in question is in "chief value" of reinforced paper, a necessary requisite for classification under the claimed paragraph. While it was stipulated that plaintiffs' "Exhibit 1 is in chief value of paper" (R. 5, 6), this is not tantamount to a concession either that the article is in chief value of toyo paper or that the merchandise, as represented by said exhibit, is in chief value of "reinforced" paper. The stipulation in question is concerned only with paper and cannot be broadened to cover either toyo paper or "reinforced" paper.

A situation similar, in our opinion, to that in the present case is the one which obtained in *Edward M. Poons Co. of Kobe, Inc.* v. *United States*, 26 CCPA 310, C.A.D. 33. The merchandise there involved consisted of certain toyo hats and toyo cloth made by weaving paper that had been cut into strips of narrow width, which strips were machine-twisted, wound on spools, dipped in a bath of cellulose material, dried, and put up in skeins 600 feet in length. The court therein held the articles involved classifiable as manufactures of paper, or of which paper is the component material of chief value, not specially provided for, under paragraph 1313 of the Tariff Act of 1922, or paragraph 1413 of the Tariff Act of 1930, rather than as articles composed wholly or in chief value of papers with coated surface or surfaces, not specially provided for, under paragraph 1305 of the Tariff Act of 1922 or paragraph 1405 of the Tariff Act of 1930. In so holding, the court, in the *Poons* case, *supra*, stated that the provisions of paragraphs 1305 and 1405 did not apply to the articles in question, since the only paper which formed the basic materials was an uncoated paper; that the coating would have to appear on the paper "before it entered the article," i.e., the initial paper prior

to any manufacturing process had not been coated. In the case at bar, plaintiffs' testimony, as heretofore noted, was to the effect that the paper in the imported article was "reinforced * * * with the same paper itself" and that the paper is reinforced "because it's woven of itself." In our opinion, the paper contained in the involved article cannot be considered reinforced paper, inasmuch as it was not reinforced paper "before it entered the article."

As heretofore noted, plaintiffs' alternative claim is that the involved merchandise is properly dutiable under paragraph 1413 of the act, as modified, *supra*, as "manufactures of paper, or of which paper is the component material of chief value." It was stipulated between the parties that plaintiffs' exhibit 1, representative of the imported merchandise, was in chief value of paper. However, despite the concession so made, plaintiffs' claim under paragraph 1413, *supra*, cannot prevail for tariff purposes over the provisions of modified paragraph 409, under which the involved merchandise was classified, since the provision of the latter paragraph for "All articles not specially provided for, wholly or partly manufactured of * * * bamboo" is more specific than the provision contained in paragraph 1413 for "manufactures of paper, or of which paper is the component material of chief value."

In *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T.D. 41575, the merchandise involved consisted of umbrellas in chief value of paper, with frames of bamboo. The court held the predecessor provision of paragraph 407 of the Tariff Act of 1922 for "articles not specially provided for, wholly or partly manufactured of * * * bamboo" to be more specific than the provision contained in paragraph 1313 of said act for "manufactures of paper, or of which paper is the component material of chief value, not specially provided for." In the *Bough* case, *supra*, plaintiff alternatively claimed the merchandise classifiable under paragraph 1305, predecessor to paragraph 1405 of the present act. The court therein, however, also held paragraph 407, *supra*, to be more specific with respect to the merchandise involved than the provision in said paragraph 1305 for "all other articles, composed wholly or in chief value of any of the foregoing papers, not specially provided for."

For all of the reasons heretofore stated, we hold the involved merchandise properly dutiable under paragraph 409 of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, *supra*, at the rate of 25 per centum ad valorem as articles, not specially provided for, partly manufactured of bamboo, as classified. The protest claims are overruled.

*Judgment will be rendered accordingly.*